IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| OMAR SALAH,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>DIAMOND CRYSTAL BRANDS, INC. and<br>CLIFF HUFF,<br><br>　　　　Defendants. | No. 4:15-cv-00236-JAJ-HCA<br><br><br><br>**ORDER** |

This action was brought under Iowa state law and the Family Medical Leave Act ("FMLA"). Plaintiff, Omar Salah, claims that Defendants, Diamond Crystal Brands and Cliff Huff, terminated Plaintiff's employment as a result of his seeking workers' compensation and/or FMLA leave, in violation of Iowa tort law and the FMLA. Plaintiff seeks damages including lost wages, emotional distress, and exemplary damages for these violations.

This matter comes before the Court pursuant to Defendants' May 19, 2016 motion for summary judgment. [Dkt. 32]. Plaintiff responded to this motion on June 9, 2016. [Dkt. 37]. In their motion for summary judgment, Defendants claim that there is no genuine issue of material fact as to whether Plaintiff engaged in protected conduct, whether Plaintiff's protected conduct was causally connected to the termination of his employment, and whether Plaintiff suffered from a qualifying injury under the FMLA.

## I. STATEMENT OF UNDISPUTED MATERIAL FACTS

The Court finds the following undisputed facts: Defendant Diamond Crystal Brands is a nationwide supplier of specialty food products. Plaintiff began working for Defendant Diamond Crystal Brands full time as an "order puller" in 2005, and later took on a supervisory role as a crew leader on the night shift. Plaintiff transferred to Diamond Crystal Brands' Mitchellville facility in 2012. Defendant Cliff Huff was Plaintiff's supervisor at the Mitchellville facility beginning in early 2013. Douglas Enabnit was Plaintiff's human resources manager. Plaintiff worked the day shift as an at-will employee at the Mitchellville facility under the supervision of Defendant Huff until he was fired on July 12, 2013.

1

During his time at Diamond Crystal Brands, Plaintiff suffered two back injuries. The first occurred in June, 2012. Plaintiff suffered a back injury while working in Defendant Diamond Crystal Brands' warehouse. Immediately following the injury, Plaintiff filled out an accident report, went to the company doctor, and received treatment. Plaintiff's Deposition ("Pl. Depo"), Defendants' Appendix ("Deft. Appx.") P. 25 [Dkt. 32-2]. Plaintiff returned to work with Diamond Crystal Brands following his June, 2012 injury.

Following his first back injury, but prior to his second back injury, Plaintiff was placed on a "Last Chance" agreement due to attendance issues. Defendants' attendance policy assigned employees points for being late or missing work, and accumulation of a certain number of points resulted in disciplinary action up to and including termination. Deft. Appx. PP. 51–53 [Dkt. 32-2]. Plaintiff was provided with at least four notices of attendance violations. Deft. Appx. P. 50 [Dkt. 32-2]; Deft. Supp. Appx. PP. 76–80 [Dkt. 38-2]. In his Last Chance agreement, Plaintiff was informed that he was required to go 112 successful days from the date of warning to have four points drop off his attendance point total. Plaintiff was informed that failure to do so would result in an increase in progressive discipline and termination. Deft. Appx. P. 50 [Dkt. 32-2]; Deft. Supp. Appx. P. 76 [Dkt. 38-2]. Plaintiff signed the Last Chance agreement on April 10, 2013. *Id.*

In June, 2013, almost exactly one year after his first injury, Plaintiff suffered a second back injury while at work. Plaintiff testified at his deposition that he reported this injury to Defendant Huff and explained to Huff that his back was hurting. Pl. Depo, Deft. Appx. P. 25 [Dkt. 32-2]; Pl. Appx. P. 1 [Dkt. 37-2]. Plaintiff testified that he was then instructed to sit in the office and ice his back, where he stayed until near the end of the workday. Pl. Depo, Deft. Appx. P. 25 [Dkt. 32-2]. At the end of the day, Plaintiff testified that Defendant Huff told him to go home and see how things were the following morning. *Id.* In an affidavit signed by Plaintiff on June 1, 2016, Plaintiff states that he made a request for medical care on the date of injury and the following day, but was not provided medical care by Defendants. Pl. Appx. P. 1 [Dkt. 37-2]. Plaintiff never filled out an accident report related to his June 2013 injury, though Defendant Huff completed a report which was never signed by Plaintiff. See Deft. Appx. 55–56 [Dkt. 32-2]; Pl. Appx. P. 10 [Dkt. 37-2].

Plaintiff continued working after his injury until he saw his personal physician on July 10, 2013. Notes from that visit indicate that Plaintiff was seen for the primary complaints of 1) sinus problems, 2) sore throat, and 3) back pain from lifting a heavy object a few days prior. Pl. Appx. P. 7–8 [Dkt. 37-2]. A doctor's note issued by Plaintiff's personal physician on July 10, 2013

2

indicates that Plaintiff was seen that day, but does not indicate that Plaintiff should be excused from work for any period of time. Deft. Supp. Appx. P. 81 [Dkt. 38-2]. Following his July 10, 2013 visit to his personal physician, Plaintiff missed two days of work—July 10 and 11, 2013. Upon his return to work on July 12, 2013, Plaintiff's employment was terminated.[1]

Plaintiff thereafter brought the instant action in a two-count petition filed in Iowa state district court. Defendants removed the case to this Court on the basis of diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) and on the basis of federal question and supplemental jurisdiction pursuant to 28 U.S.C. § 1331 on July 27, 2015. [Dkt. 1]. Count I of Plaintiff's complaint alleges Retaliatory Discharge in Violation of Public Policy (Worker's Compensation). Plaintiff's Count II alleges Retaliatory Discharge in Violation of Public Policy (Family Medical Leave). Plaintiff seeks damages including but not limited to mental and emotional distress, lost wages, future earnings, and exemplary damages.

## II. LEGAL STANDARD FOR SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56 provides the summary judgment standard: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A motion for summary judgment may be granted only if, after examining all of the evidence in the light most favorable to the nonmoving party, the Court finds that no genuine issues of material fact exist and that the moving party is entitled to judgment as a matter of law. *HDC Med., Inc., v. Minntech Corp.*, 474 F.3d 543, 546 (8th Cir. 2007) (citation omitted); see also *Kountze ex rel. Hitchcock Found. v. Gaines*, 536 F.3d 813, 817 (8th Cir. 2008) ("[S]ummary judgment is appropriate where the pleadings, discovery materials, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to summary judgment as a

---

[1] When resisting a motion for summary judgment, local rules require the resisting party to file a "response to the statement of material facts in which the resisting party expressly admits, denies, or qualifies each of the moving party's numbered statements of fact." Local Rule 56(b)(2). The resisting party must also file a "statement of additional material facts that the resisting party contends preclude summary judgment, filed as an electronic attachment to the [resistance] brief under the same docked entry." Local Rule 56(b)(3). "The failure to respond, with appropriate citations to the appendix, to an individual statement of material fact constitutes and admission of that fact." Local Rule 56.

    Here, Plaintiff failed to file either a response to Defendants' statement of undisputed material facts or a separate statement of disputed material facts which allegedly preclude summary judgment. Plaintiff did include in his brief a statement of facts. The Court finds these facts based on Defendants' unresisted statement of undisputed material facts and the facts supported by the record as a whole, taking into account Plaintiff's brief's statement of facts, which Defendants responded to as if it were the required statement of additional disputed facts. [Dkt. 38].

matter of law."). The nonmoving party is "entitled to all reasonable inferences" that can be drawn from the evidence without resorting to speculation. *Sprenger v. Fed. Home Loan Bank of Des Moines*, 253 F.3d 1106, 1110 (8th Cir. 2001).

"'[T]he substantive law will identify which facts are material.'" *Guinan v. Boehringer Ingelheim Vetmedica, Inc.*, 803 F. Supp. 2d 984, 993 (N.D. Iowa 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "A genuine issue of fact is material if it 'might affect the outcome of the suit under the governing law.'" *Saffels v. Rice*, 40 F.3d 1546, 1550 (8th Cir. 1994) (citation omitted). "[A]n issue of material fact is genuine if the evidence is sufficient to allow a reasonable jury verdict for the nonmoving party." *Great Plains Real Estate Dev., L.L.C. v. Union Cent. Life Ins. Co. et al.*, 536 F.3d 939, 944 (8th Cir. 2008) (citation omitted).

"The moving party bears the initial responsibility of informing the district court of the basis for its motion and identifying those materials, if any, that demonstrate an absence of a genuine issue of material fact." *Johnson v. Wheeling Mach. Products*, 779 F.3d 514, 517 (8th Cir. 2015) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). Once the movant has properly supported its motion, "the court must enter summary judgment if the nonmovant then 'fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Id.* (citing *Celotex Corp.*, 477 U.S. at 322). The nonmoving party "may not rest upon the mere allegations or denials of [its] pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Dunmore v. Theissen*, 994 F.2d 842, *1 (8th Cir. 1993) (quoting Fed. R. Civ. P. 56(e)) (unpublished). "[A]lthough [the non-moving party] does not have to provide direct proof that genuine issues of fact exist for trial, the facts and circumstances that [the party] relies 'upon must attain the dignity of substantial evidence and not be such as merely to create a suspicion.'" *Taylor v. White*, 321 F.3d 710, 715 (8th Cir. 2003) (citation omitted). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Sprenger*, 253 F.3d at 1110 (quoting *Liberty Lobby*, 477 U.S. at 252) (internal quotation marks omitted).

### III. ANALYSIS

Defendants argue that, based on the above, there is no genuine issue of material fact with respect to either Plaintiff's state law wrongful discharge claim or Plaintiff's FMLA claim. The Court addresses each claim in turn.

4

**A. Retaliatory Discharge in Violation of Public Policy — Worker's Compensation**

Plaintiff's Count I is brought under the Iowa tort of wrongful discharge. "Iowa is an at-will employment state," meaning that the employment relationship is "generally terminable by either party at any time, for any reason, or no reason at all." *Berry v. Liberty Holdings, Inc.*, 803 N.W.2d 106, 109 (Iowa 2011) (citations and internal quotation marks omitted). However, there is a "narrow public-policy exception to the general rule of at-will employment" which "limits an employer's discretion to discharge an at-will employee when the discharge would undermine a clearly defined and well-recognized public policy of the state." *Id.* (citations omitted). "When an employee is terminated for a reason that violates a well-established public policy, the employee has a remedy for damages." *Teachout v. Forest City Cmty. Sch. Dist.*, 584 N.W.2d 296, 299 (Iowa 1998) (citation omitted).

To prove a case of wrongful discharge in violation of public policy, Plaintiff "must establish (1) engagement in a protected activity, (2) adverse employment action, and (3) a causal connection between the two." *Id.* (citing *Hulme v. Barrett*, 480 N.W.2d 40, 42 (Iowa 1992)). The parties agree that Plaintiff suffered adverse employment action when Defendants terminated Plaintiff's employment. However, Defendants argue that there is no genuine issue of material fact as to whether Plaintiff engaged in protected conduct or whether such conduct was causally connected to his being fired.

*i. Protected Conduct*

The Iowa Supreme Court has recognized that an employee has the right "to seek the compensation which is granted by law for work-related injuries." *Springer v. Weeks & Leo Co., Inc.*, 429 N.W.2d 558, 560 (Iowa 1988); *Teachout*, 584 N.W.2d 296, 300 (Iowa 1998) (citing *Niblo v. Parr Mfg., Inc.*, 445 N.W.2d 351, 353 (Iowa 1989); *Springer*, 429 N.W.2d at 560). This includes both people who file for workers' compensation and those who desire or threaten to file a workers' compensation claim. See *Niblo*, 445 N.W.2d at 353 (no challenge to instruction regarding proof of discharge "based on plaintiff's desire or threat to file a compensation claim"). Plaintiff claims that he engaged in the protected conduct of reporting his workplace injury and/or seeking medical care related to his workplace injury. First Amended Complaint ("FAC") P. 3 ¶ 18 [Dkt. 19]. Plaintiff's reporting his workplace injury comes within the scope of the protections recognized as a public policy exception to the at-will employment rule embodied by Iowa Code Chapter 85. The

question is whether the record raises a genuine issue of material fact as to whether Plaintiff engaged in the alleged protected conduct of reporting and seeking medical care for his workplace injury.

In determining whether a genuine issue of material fact exists, the Court views the facts in the light most favorable to Plaintiff as the nonmoving party and draws all reasonable inferences in Plaintiff's favor. See *Johnson*, 779 F.3d at 516 ("The facts are presented in the light most favorable to [the nonmoving party]."); *Sprenger*, 253 F.3d at 1110 (nonmoving party "entitled to all reasonable inferences" that can be drawn without resorting to speculation). Here, the parties agree that Plaintiff suffered an injury while at work on June 25, 2013. However, the parties dispute whether Plaintiff made Defendants aware of his injury and of the fact that his July 10, 2013 doctor appointment was allegedly related to that injury. The record reflects that Plaintiff made Defendant Cliff Huff aware of his workplace injury when it occurred, leading to Huff's completion of an Accident/Injury investigation report. This reporting of a workplace injury would necessarily be the first step in seeking workers' compensation and therefore constitutes protected conduct. Beyond this initial report, the Court finds that there is a genuine issue of material fact as to whether and to what extent Plaintiff engaged in protected conduct by reporting his workplace injury and/or seeking medical treatment through Defendants for that injury.

*ii. Causation*

Plaintiff must show a causal connection between his engaging in protected conduct and Defendants' firing him. This causation standard is high. *Fitzgerald v. Salsbury Chem., Inc.*, 613 N.W.2d 275, 289 (Iowa 2000) (citing *Teachout*, 584 N.W.2d at 300). "[I]n order to prevail on a wrongful discharge claim in violation of public policy, the plaintiff must show the protected conduct was the determining factor in the adverse employment action." *Rivera v. Woodward Res. Ctr.*, 865 N.W.2d 887, 898 (Iowa 2015). The "determining factor is one that tips the balance in an employment decision." *Id.* (citing *Teachout*, 584 N.W.2d at 302 n.2; *Smith v. Smithway Motor Xpress, Inc.*, 464 N.W.2d 682, 686 (Iowa 1990)). The protected conduct need not be "the main reason behind the decision" to be the determining factor, "but it must be the factor that makes the difference in the employment outcome." *Id.* (*citing Smith*, 464 N.W.2d at 686; *Davis*, 661 N.W.2d 536, 536 (Iowa 2003)). "Iowa law does not impose liability on an employer when the determining factor was a legitimate business reason and the unlawful retaliation was simply a motivating factor." *Id.* The mere fact that an employee's termination follows his engaging in protected conduct is not sufficient to generate a jury question on causation. See *Teachout*, 584 N.W.2d at

6

302–03 (collecting cases); *Phipps v. IASD Health Servs. Corp.*, 558 N.W.2d 198, 203 (Iowa 1997) ("Other than the fact that he was terminated approximately one month after he filed his grievance, Phipps has failed to produce sufficient evidence that he was fired because" of his engaging in protected conduct).

Defendants contend that there is no genuine issue of material fact with respect to causation. There are two relevant instances of potentially protected conduct in this case: Plaintiff's reporting his initial injury on June 25, 2013, and Plaintiff's missing work on July 10 and 11, 2013. The Court first notes that the parties disagree about whether Defendants were aware that Plaintiff's July 10, 2013 appointment and subsequent absence from work were related to his June 25, 2013 injury. The record demonstrates that Plaintiff worked his regular shifts between his injury on June 25, 2013 and his appointment with his personal physician on July 10, 2013. Deft. App. P. 59 [Dkt. 32-2]. In support of the argument that Defendants were aware of the connection between his injury and his July 10 appointment, Plaintiff cites an affidavit from Plaintiff in which he claims he requested medical care on June 25 and June 26, 2013. Plaintiff does not clarify whether those requests were written or oral, and neither the appendix attached by Plaintiff or Defendants contains any further evidence apart from Plaintiff's testimony that Plaintiff requested medical attention from Defendants beyond icing his back the day of injury. In fact, the record unequivocally supports the conclusion that Plaintiff never filed an accident report or signed off on the accident report completed by Defendant Huff, and "did not pursue" FMLA benefits. Deft. Appx. PP. 155–56 (Huff's accident report stating that he told Plaintiff to complete report on multiple occasions); P. 33 ("I didn't pursue anything"). Plaintiff also alleges that he presented a doctor's note upon his return to work, excusing his absences and explaining their connection to his back injury. That note is not part of the record. The record includes Plaintiff's physician's visit notes, which report nothing about missed work, and a note from Plaintiff's physician stating that Plaintiff visited his office on July 10, 2013, which similarly includes no information about absences from work. Deft. Appx. PP. 60–61 [Dkt. 32-2]; Deft. Supp. Appx. P. 81 [Dkt. 38-2]. Finally, prior to attending his appointment only July 10, 2013, Plaintiff told Defendant Huff "I need to go to the doctor. I'm not feeling good. I'm all sore." Pl. Depo. Deft. Appx. P. 15 [Dkt. 32-2]. This is the extent of the evidence related to Defendants' knowledge about the connection between Plaintiff's June 25, 2013 injury and his July 10, 2013 absence.

"[I]f the employer has no knowledge the employee engaged in the protected activity, causation cannot be established." *Fitzgerald*, 613 N.W.2d at 289 (citations omitted). Here, while Defendants knew that Plaintiff engaged in the protected activity of reporting his initial injury on June 25, 2013, the record is not so clear with respect to Defendants' knowledge of the connection between Plaintiff's July 10, 2013 appointment and his June 2013 injury. However, even if there is a genuine issue of material fact as to whether or not Defendants were aware that Plaintiff's July 10, 2013 appointment was related to his June 25, 2013 injury, that evidence is not sufficient to raise a jury question with respect to causation. Assuming, for the sake of argument, that Defendants were aware of a connection between Plaintiff's June 25, 2013 injury and his July 10, 2013 appointment, Plaintiff must do more than establish that Defendants were aware that Plaintiff suffered an injury for which he sought treatment. He must put forth evidence from which a reasonable jury could conclude that his seeking treatment was "the determining factor" in Defendants' decision to terminate Plaintiff's employment. *Rivera*, 865 N.W.2d at 898.

Though Plaintiff need not prove that there was no legitimate business purpose at play, "Iowa law does not impose liability on an employer when the determining factor was a legitimate business reason and unlawful retaliation was simply a motivating factor." *Id.* The evidence demonstrates that Defendants had a legitimate business reason to terminate Plaintiff's employment. Plaintiff signed a "Last Chance" agreement with Defendants on April 10, 2013. Plaintiff was informed that his employment would be terminated if he was unable to meet Defendants' attendance standards. Plaintiff called Defendant Huff on July 10, 2013 and told him he did not feel well and was "all sore." Plaintiff thereafter did not report to work on July 10. Plaintiff claims he spoke to Huff again on the 10th and informed him he had to rest at home for three days. Plaintiff then did not report to work for one more day, July 11. Plaintiff was operating under the Last Chance agreement and had been warned that if he missed work he would be terminated. When Plaintiff returned to work on July 12, 2013, Plaintiff testified that Defendant Huff told him, "You've been absent and you're terminated." Deft. Appx. P. 26 [Dkt. 32-2]. An affidavit, an email, and Plaintiff's termination letter, all authored by Douglas Enabnit—the Diamond Brand employee who made the decision to terminate Plaintiff—reflect that Enabnit fired Plaintiff for violating the Last Chance agreement. Deft. Appx. PP. 49, 65 [Dkt. 32-2]; Deft. Supp. Appx. P. 75 [Dkt. 38-2] ("Omar was absent from work this morning and called Cliff [Huff] (his supervisor) after his shift had already begun to tell him that he did not feel well and would not be

8

into work."). As required, Defendants have "inform[ed] the district court of the basis for [their] motion and identif[ied] those materials, if any, that demonstrate an absence of a genuine issue of material fact." *Johnson*, 779 F.3d at 517 (citing *Celotex Corp.*, 477 U.S. at 323). Namely, Defendants have pointed to evidence in the record demonstrating that there is no genuine issue of material fact with respect to causation and that Defendants instead terminated Plaintiff's employment for a legitimate business purpose—Plaintiff's absenteeism.

"[A]lthough [the non-moving party] does not have to provide direct proof that genuine issues of fact exist for trial, the facts and circumstances that [the party] relies 'upon must attain the dignity of substantial evidence and not be such as merely to create a suspicion.'" *Taylor*, 321 F.3d at 715 (citation omitted). Plaintiff has failed to garner such evidence in this case. In arguing that a genuine issue of material fact exists with respect to causation, Plaintiff relies exclusively on the timing of his termination. Plaintiff argues that he "was terminated immediately following the time he sought treatment for his work-related injury" and that "there is one common factor, that [Plaintiff] was injured while working at Diamond Crystal Brands and that he was fired shortly thereafter. Most importantly, he was fired immediately upon returning from receiving treatment for a work-related injury." Pl. Resistance P. 4 [Dkt. 37-1]. Plaintiff agrees in his resistance that "he was terminated for missing work. There is no dispute that Mr. Salah was on a last chance agreement and that his termination was centered around his absences." Pl. Resistance P. 3 [Dkt. 37-1]. Plaintiff argues that, while these facts are not in dispute, there is still a genuine causation issue because he was terminated after missing work to receive medical treatment for a work-related injury. However, evidence of temporal proximity, "without more, is insufficient to generate a jury question on retaliation." *Phipps*, 558 N.W.2d at 203 (citing *Hulme v. Barrett*, 480 N.W.2d 40, 43 (Iowa 1992) (relying on *Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1314 (6th Cir. 1989) ("The mere fact that an adverse employment decision occurs after a charge of discrimination is not, standing alone, sufficient to support a finding that the adverse employment decision was in retaliation to the discrimination claim."))).[2]

---

[2] Temporal proximity is similarly not enough to establish causation under the FMLA. See *Malloy v. U.S. Postal Service*, 756 F.3d 1088, 1091 (8th Cir. 2014) ("Generally, more than a temporal proximity between protected activity and termination is required to present a genuine issue of fact for trial," and "evidence that the employer had been concerned about a problem before the employee engaged in the protected activity undercuts the significance of the temporal proximity.").

9

While protected conduct need not be "the main reason behind the decision" to be the determining factor, "it must be the factor that makes the difference in the employment outcome." *Rivera*, 865 N.W.2d at 898 (citations omitted). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Sprenger*, 253 F.3d at 1110. Plaintiff's bare allegation that he requested medical treatment on June 25 and 26, 2013, and that he presented a doctor's note excusing his absences due to a work-related injury, both unsupported by any other evidence in the record, do not "attain the dignity of substantial evidence" sufficient to do more than "merely create a suspicion" that Defendants were aware of the connection between Plaintiff's injury and his July 10, 2013 appointment and subsequent absences. *Taylor*, 321 F.3d at 715 (8th Cir. 2003) (citation omitted). Furthermore, even assuming a genuine issue of material fact as to Defendants' knowledge, that knowledge provides no evidence that Plaintiff's protected conduct was the "determining factor" in Defendants' decision beyond the timing of events. The Court finds that a reasonable jury could not find for the Plaintiff on the issue of causation in this case, as Plaintiff relies merely on the timeline of events. This is particularly true in light of Defendants' evidence of a legitimate business reason for termination. Defendants' motion for summary judgment with respect to Count I is therefore granted.

**B. Retaliatory Discharge in Violation of Public Policy — Family Medical Leave Act**

Plaintiff's Count II alleges retaliatory discharge in violation of the FMLA, 29 U.S.C. § 2615(a)(1) and (a)(2). FAC ¶¶ 32, 33 [Dkt. 19].The Eighth Circuit has

> recognized three categories of FMLA claims arising under 29 U.S.C. § 2615(a)(1)-(2): (i) entitlement claims, in which an employee alleges a denial of a benefit to which he was entitled under the statute; (ii) discrimination claims, in which an employee alleges that the employer discriminated against him in the terms and conditions of employment because the employee exercised rights to which he was entitled under the FMLA; and (iii) retaliation claims, in which the employee alleges that the employer took adverse action against him for opposing a practice made unlawful under the FMLA.

*Johnson*, 779 F.3d 514, 517–18 (8th Cir. 2015) (citing *Pulczinski v. Trinity Structural Towers, Inc.*, 691 F.3d 996, 1005–06 (8th Cir. 2012)). Plaintiff's complaint alleges that Defendants refused to approve Plaintiff's FMLA leave pursuant to Plaintiff's request and presentation of a medical excuse and that Defendants retaliated against "his right to take leave under the FMLA." FAC ¶¶ 33, 34 [Dkt. 19]. In Plaintiff's resistance to Defendants' motion for summary judgment, Plaintiff argues that his FMLA claims should survive as discrimination, retaliation, and entitlement claims.

*i. Discrimination Claim under the FMLA*

An FMLA discrimination claim "arises when an employer takes adverse action against an employee because the employee exercises rights to which he is entitled under the FMLA." *Pulczinski*, 691 F.3d at 1006. "In this scenario, the employer does not prevent the employee from receiving FMLA benefits. Rather, it is alleged that after the employee exercised his statutory rights, the employer discriminated against him in the terms and conditions of employment." *Id.*

Here, Plaintiff alleges that Defendants prevented him from receiving FMLA benefits to which he was entitled. Plaintiff testified at his deposition that not only did he not receive any FMLA benefits in relationship to his June 25, 2013 injury, he "didn't pursue anything." Pl. Depo., Deft. Appx. P. 33 [Dkt. 32-2]. There is no evidence demonstrating a genuine issue of material fact with respect to whether Plaintiff exercised rights to which he was entitled, and therefore Defendants could not have discriminated against Plaintiff for the exercise of such rights.

*ii. Retaliation Claim under the FMLA*

A retaliation claim under the FMLA "is analogous to retaliation claims that are familiar under Title VII and other federal antidiscrimination statutes." *Pulczinski*, 691 F.3d at 1005 (citations omitted). "If an employee opposes any practice made unlawful under the FMLA—for example, if an employee complains about an employer's refusal to comply with the statutory mandate to permit FMLA leave—then the employer may not for that reason take adverse action against the employee who is engaged in the opposition." *Id.*

Here, there is no genuine issue of material fact with respect to whether Plaintiff ever opposed any practice made unlawful under the FMLA. There is no documentation in the record supporting an inference that Plaintiff opposed any of Defendants' FMLA-related practices. Plaintiff testified at his deposition that he had previously successfully utilized FMLA benefits on two occasions. Pl. Depo., Deft. Appx. PP. 14–15 [Dkt. 32-2]. Plaintiff testified that he had never opposed any of Defendants' FMLA policies or practices. *Id.* at PP. 32–33. Therefore, there is no genuine issue of material fact with respect to Plaintiff's retaliation claim under Count II.

*iii. Entitlement Theory*

Even assuming Plaintiff's FMLA retaliation and discrimination claims were not precluded for the above reasons, to proceed with any of the three types of FMLA claims explained above, the Plaintiff must establish that he suffered from a qualifying injury and that he provided his employer with sufficient notice of his injury and need for medical treatment as a result. See

*Johnson*, 779 F.3d at 518 (discussing requirement that plaintiff establish he was entitled to FMLA benefits for both entitlement and discrimination claims). Construing the facts in the light most favorable to the Plaintiff, the record creates no genuine question as to whether Plaintiff suffered an FMLA-qualifying injury.

An employee is "entitled to a total of 12 workweeks of leave during any 12-month period" for a variety of circumstances, including the birth of a child, caring for a spouse with a "serious health condition" or the employee's own "serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1). "The term 'serious health condition' means an illness, injury, impairment, or physical or mental condition that involves—(A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a healthcare provider." 29 U.S.C. 2611(11). Here, Plaintiff does not allege any inpatient care, and instead argues he was eligible for FMLA benefits for a serious health condition requiring continuing treatment by a healthcare provider.

"A serious condition involving continuing treatment by a healthcare provider includes" a condition leading to "incapacity and treatment." 29 C.F.R. § 825.115(a). "A period of incapacity of more than three consecutive, full calendar days, and any subsequent treatment or period of incapacity relating to the same condition" may qualify as a serious health condition under the FMLA, when it also involves treatment two or more times or results in a "regimen of continuing treatment."[3] *Id.*

It is undisputed that Plaintiff only missed two days of work as a result of his June 25, 2013 back injury. Plaintiff missed work on July 10 and July 11, 2013. Plaintiff returned to work on July 12, 2013. Upon Plaintiff's return to work, his employment was terminated. Plaintiff's injury does not constitute a "serious health condition" pursuant to federal law. *Beal v. Rubbermaid Commercial Products, Inc.*, 972 F. Supp. 1216, 1224 (S.D. Iowa 1997), *aff'd* 149 F.3d 1186 (8th Cir. 1998), (plaintiff does not meet "requisite three day incapacity" when no genuine issue of material fact exists as to plaintiff's never having missed work for more than two days related to her health condition); *Barnett v. Revere Smelting & Refining Corp.*, 67 F. Supp. 2d 378, 384

---

[3] Because the Court finds that Plaintiff does not suffer from a qualifying injury based on the fact that Plaintiff did not suffer the requisite period of incapacitation, the Court does not address whether Plaintiff meets either of these treatment requirements. Furthermore, other methods of establishing a serious health condition—aside from demonstrating a period of incapacity and treatment—are irrelevant here. See 29 C.F.R. § 825.115 (noting pregnancy, chronic conditions, permanent or long term conditions, and conditions requiring multiple treatments during a period of absence may establish a serious health condition).

(S.D.N.Y. 1999) ("[B]ecause [plaintiff] was absent for only 2 days, he cannot rely on this definition" requiring "the inability to work for more than 3 consecutive days and either medical treatment on 2 or more occasions, or medical treatment on one occasion resulting in a regimen of continuing treatment."); *Haefling v. United Parcel Serv., Inc.*, 169 F.3d 494, 499–500 (7th Cir. 1999) (employee failed to establish period of incapacity lasting more than three consecutive days).[4]

### IV. CONCLUSION

In the instant case, there is no genuine issue of material fact with respect to the causation element of Plaintiff's state law wrongful discharge claim because mere temporal proximity is not alone sufficient to raise a jury question with respect to causation. Similarly, there is no genuine issue of material fact with respect to Plaintiff's FMLA claim because Plaintiff did not suffer an FMLA qualifying injury. Therefore, summary judgment is appropriate in this case.

Upon the foregoing,

**IT IS ORDERED** that Defendants' motion for summary judgment is **GRANTED**. The Clerk shall enter judgment for Defendants.

**DATED** this 28th day of July, 2016.

_____
JOHN A. JARVEY, Chief Judge
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF IOWA

---

[4] Because the Court finds that Plaintiff did not suffer a qualifying injury and grants Defendants' motion for summary judgment on both Counts, the parties' arguments with respect to notice with respect to Count II and with respect to damages are moot.